In the matter of the estate of Catherine Connelly, deceased. In July, 1901, the surrogate determined the cash value of the legacies, under the will, on the report of the appraiser, but failed to comply with the direction of the tax law requiring immediate notice to the parties interested, and such notice was not given until 1902. The executor served a notice of appeal on or about the 28th day of May, 1902, from the determination of the surrogate, which notice the comptroller returned upon the ground that the appeal had not been taken within the time required by law. The executor then applied to the surrogate for a citation requiring the comptroller to show cause why he should not accept service of the notice of appeal, and why so much of the transfer tax as the executor deemed to be in excess of the amount for which it should have been assessed should not be refunded, and why the determination of the surrogate, made on the 24th day of July, 1901, should not be modified, and why the executor should not have such further relief in the premises as might be just. The citation was issued accordingly. Application denied.

Robert O. Bascom, for petitioner.
Potter, Kellogg & King, for comptroller.

LESTER, S. It appears, from the proof submitted, that after the determination of the surrogate in this matter, made on the 24th day of July, 1901, Emma Wing recovered a judgment for $721 upon a claim which the executor had rejected; that another claim of $90 was subsequently presented, which the executor allowed and paid; and that the executor incurred expenses in administering the estate, to the amount of $200, which he claims were not allowed to him by the determination of the surrogate, from which he has attempted to appeal; and his counsel now asks, among other things, that the surrogate make an order modifying the previous determination of June 24, 1901, by deducting from the cash value of the estate, as determined by him, said judgment of $721 and said claim of $90 and said expenses, amounting to $200.

There seems to be a difference of opinion as to whether the surrogate has power, under any circumstances, to modify his determination of the cash value of an estate which he makes upon the report of the appraiser, under the provisions of section 232 of the tax law, except upon an appeal, for which provision is made in the same section. In the opinion of Justice Hatch, in which the other members of the court concurred, the appellate division of the First department has said, in respect to these proceedings:

"There is no provision of the statute permitting the surrogate to amend any decree or order, even his own. The remedies provided by the statute in force at the time the orders appealed from were made are: First, an appeal to the surrogate within sixty days from the fixing, assessing, and determination of the tax by him; second, an application by the comptroller of the state if he believes that an appraisal, assessment, or determination has been fraudulently, collusively, or erroneously made. * * * If we are right in our conclusions as to the power of the surrogate in these matters, it follows that the authorities cited by the respondent touching the general power and jurisdiction of surrogates have no application, and we do not discuss them." In re Crerar, 56 App. Div. 481, 482, 67 N. Y. Supp. 795.

The appellate division of the Fourth department, however, has taken a broader view of the powers of the surrogate, and has held, in Morgan v. Cowie, 49 App. Div. 612, 63 N. Y. Supp. 608, that the remedy by appeal is doubtless the only remedy for "purely legal errors," but that subdivision 6 of section 2481 of the Code of Civil Procedure is applicable to proceedings of this character, and that the power there given is independent of the right to appeal. Justice Spring remarks, in his opinion:

"The authority of a court to modify its own decrees for an error in fact, newly discovered evidence, or any cause extrinsic of the record, is an inherent one, and is vested in every court with such restrictions as the legislature has seen fit to impose."

It seems to me, however, even if we should adopt the broader views expressed by the appellate division of the Fourth department, it will still be impossible to find authority for such a modification of the determination of June 24, 1901, as the petitioner here seeks. Even under the powers which the court of appeals has declared reside in the surrogate to modify his decrees (In re Henderson, 157 N. Y. 423, 52 N. E. 183), that power is still restricted to clerical errors or mistakes which do not involve questions of law, or determinations in respect to matters of fact upon which the court has exercised its judgment upon the evidence presented to it.

In the present case, the claim, upon which a judgment was subsequently recovered against the executor, was known to exist, and the executor had disputed its validity. Contrary to his expectations, it would seem, its validity was afterwards established, and it had to be satisfied out of the estate. If there was error in not deducting this claim from the assets, in appraising the estate, in connection with the other debts and liabilities which were deducted from the assets, that was an error of judgment, which cannot be corrected by an order modifying the original determination. As to that, the determination of the surrogate is conclusive. The statute contemplates the appraisal of estates for the purpose of the transfer tax at an early period in the process of administration. Such appraisal may be had before the publication for creditors is completed; before the assets are converted into cash; before the expenses of administering the estate have been fully incurred. The statute contemplates an estimate of these various matters in the light of such information as he can obtain by his examination of the executor and such witnesses as he may see fit to examine, and such witnesses as the executor himself produces for the purpose of arriving at a correct result. The appraiser having, with the best light attainable, fixed the value of the estate, his appraisal cannot be disturbed because the event proved it was inaccurate. It must, of necessity, be inaccurate in a greater or less degree. It is of course impossible that the value can be exactly estimated in advance. Assets will not produce always what they are estimated at. Debts cannot always be estimated exactly, nor can the expenses of administration; but the estimate thus made, fairly and honestly, must furnish the basis for the imposition of the tax; and it has been held that the surrogate cannot modify his determination because he has not estimated the value of property at the amount it ultimately produces to the estate, nor because he has not estimated the

claims against the estate at the amount which it is ultimately discovered they will reach, nor for error in treating real property as personal estate, nor for failure to deduct from the value of personal estate the amount of mortgages thereon. In re Monteith, 27 Misc. Rep. 163, 58 N. Y. Supp. 379; In re Wallace, 28 Misc. Rep. 603, 59 N. Y. Supp. 1084; In re Rice, 29 Misc. Rep. 404, 61 N. Y. Supp. 911; Id., 56 App. Div. 253, 61 N. Y. Supp. 911, 68 N. Y. Supp. 1147. It is difficult to see how any different rule could be maintained. If every time a chattel was sold for more or less than the value at which it was appraised, or a new debt was discovered, the surrogate could be called upon to make an order modifying his determination, he would have no time for other business.

I am also asked to require the comptroller to accept service of the notice of appeal. If the notice of appeal was well served, the case is now before me on appeal, and it is my duty to hear and decide it. If the notice of appeal was not served in time, it was ineffectual for any purpose, and no order I can now make will give it efficacy. The question is one which must soon be met, and may as well be disposed of upon the present application. Section 232 of the tax law provides that an appeal may be taken within 60 days from the fixing, assessing, and determination of the tax by the surrogate as therein provided, upon filing in the office of the surrogate a written notice of appeal. The same section imposes upon the surrogate the duty of immediately giving notice upon the determination by him as to the value of any estate which is taxable to all parties known to be interested therein. The petitioner argues that the intention of the statute is that the 60 days shall not begin to run until the notice has been given by the surrogate, and urges that it would be a hardship upon interested parties to hold a different rule, and would impose upon them the burden of finding out when the surrogate's determination was made. This, however, seems to me to be no greater burden than is cast by section 1325 of the Code of Civil Procedure upon those who seek to appeal to the court of appeals from a final judgment. That section provides that such an appeal must be taken within one year after the final judgment is entered. The language of the tax law is explicit. It is that the appeal may be taken "within sixty days from the fixing, assessing and determination of tax by the surrogate"; and I see no reason to hold that the legislature meant anything different from what the language imports. The persons interested in the estate all have notice of the proceedings before the appraisal. The matter is thus brought to their attention, and no great diligence is required on their part to enable them to find out when the order is entered. Except where the service of the notice by the surrogate is omitted, as in the present case, the parties have actual notice of the surrogate's determination; but I see no reason for holding that the service of this notice, or the omission to serve it, affects in any way the time within which the appeal must be taken. The notice of appeal in the present case having, therefore, not been served within the prescribed period, it was ineffectual for any purpose, and the opportunity of the petitioner to review the surrogate's determination has been lost. The application must be denied. An order may be submitted accordingly.

Application denied.